UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENTWOOD ROD AND GUN CLUB, INC., a California Non-Profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CONTRA COSTA, a municipality; COUNTY OF CONTRA COSTA BOARD OF SUPERVISORS, and DOES 1 through 10, inclusive,<br><br>Defendant. | No. C 06-04237 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendant's Motion for Summary Judgment or Partial Summary Judgment** |

On July 10, 2006, plaintiff Brentwood Rod and Gun Club, Inc. ("the Club" or "plaintiff"), brought this action against the County of Contra Costa, the Contra Costa Board of Supervisors, and unnamed defendants (collectively "defendants"), alleging various Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 ("Section 1983"). Defendants now move for summary judgment, arguing that plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

The Club submitted an application for a land use permit in April 1999, seeking to build a new facility for trap and skeet shooting, as well as other shooting activities, on a 39-acre parcel of

property near Byron, in Contra Costa County ("the County"), California. Following a long series of procedural steps, hearings, environmental impact studies, and the like, the Club's application was denied by the Contra Costa County Board of Supervisors ("the Board") on July 12, 2005. A more comprehensive statement of the events that transpired during that six-year period is available in the California Court of Appeal's unpublished[1] decision in <u>Brentwood Rod & Gun Club, Inc. v. Contra Costa County et al.</u>, A115408, 2007 Cal. App. Unpub. LEXIS 7165 (Cal. Ct. App. Aug. 17, 2007) (hereinafter "*Brentwood I* Opinion"), at 1-8.

On October 11, 2005, the Club filed a petition for writ of administrative mandate challenging the County's decisions to certify an unfavorable Environmental Impact Report (EIR) and to deny the land use permit. <u>See</u> Docket Entry 32 (Def.'s RJN), Exh. B at 2. The trial court declined to issue the writ, ruling, on July 5, 2006, that the County had proceeded in the manner required by law. The Club appealed the trial court's decision to the California Court of Appeal, First Appellate District.

In its opening brief, the Club characterized "the Question of Law at Issue" as "Whether the Administrative Proceedings as a Whole Were Fundamentally Fair." Def.'s RJN, Exh. A at 26. The Club advanced a number of arguments to show that the administrative proceedings were fundamentally unfair. First, the Club argued that it had been treated differently from other applicants, noting that the County issued a use permit to an adjoining property owner that allowed it to conduct quarrying operations, just a few months before the Club's application for a land use permit was denied. *Brentwood I* Opinion at 9. Second, the club contended that the Board's refusal to grant a brief continuance was patently unfair "in the context of the six years of delay preceding it." Id. at 10. Third, the Club suggested that the proceedings were unfair because the Club was granted only 5 minutes rather than the 15 minutes it had requested to make its final presentation at the July 12, 2005, hearing. Id. at 11-12. Fourth, the Club argued that the Board failed to consider the documents submitted late in the afternoon the day before the hearing. Id. at 12. Fifth, the Club argued that the number of studies it was required to prepare was "facially unfair." Id. at 14. Sixth, the Club suggested that the Board failed to take into consideration its long history of service to the community. Id. at 16. Seventh, the Club argued that the "public policy" behind the Permit

2

1 Streamlining Act (Cal. Gov. Code § 65920 et seq.) and the California Environmental Quality Law
2 (Cal. Pub. Resources Code § 21000 et seq.) demonstrated that the lengthy administrative
3 proceedings in this case were unfair. Id. at 17. Eighth, the Club argued that the County violated
4 California Civil Code, section 3482.1(d), when it denied the Club's request for a land use permit. Id.
5 at 19-20. Ninth, and finally, the Club argued that the trial court erred when it certified the EIR,
6 alleging that the application of a "noise perception" criterion was incorrect. Id. at 20-29.

7 On August 17, 2007, the Court of Appeal addressed each of these arguments and affirmed
8 the trial court's decision.

9 In the meantime, the Club filed the instant lawsuit (here styled *Brentwood II*) on July 10,
10 2006, five days after the state trial court denied the Club's petition for a write of mandate in
11 *Brentwood I*. On November 9, 2006, the court stayed this action pending the resolution of the
12 *Brentwood I* appeal. See Docket Entry 21 at 2. On April 10, 2008, the Club requested reactivation
13 of this case. Docket Entry 22. Defendants filed their motion for summary judgment on July 28,
14 2008.

15

16 LEGAL STANDARD

17 Summary judgment is proper when the pleadings, discovery and affidavits show that there is
18 "no genuine issue as to any material fact and that the moving party is entitled to judgment as a
19 matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the
20 proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material
21 fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the
22 nonmoving party. Id. The party moving for summary judgment bears the burden of identifying
23 those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine
24 issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the
25 opposing party will have the burden of proof at trial, the moving party need only point out "that
26 there is an absence of evidence to support the nonmoving party's case." Id.

27
28

3

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

DISCUSSION

Defendants move for summary judgment, arguing that the earlier state court judgment bars plaintiff's claims under the doctrines of res judicata and collateral estoppel. California law determines the preclusive effect of prior California state court judgments in federal court. Takahashi v. Bd. of Trustees, 783 F.2d 848, 850 (9th Cir. 1986); see 28 U.S.C.A. § 1738. This is true also in a Section 1983 action regardless of whether the Section 1983 cause of action was specifically litigated in the state court. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84 (1984); Takahashi, 783 F.2d at 850.

I.   Res Judicata (Claim Preclusion)

The first question is whether plaintiff's claims are barred by res judicata. It is well settled in California that the doctrine of res judicata applies to judgments in mandamus proceedings such as *Brentwood I*. See Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control, 55 Cal.2d 728, 733 (1961); see also Clark v. Yosemite Community College District, 785 F.2d 781 (9th Cir. 1986) (holding certain claims raised in a prior state court mandamus proceeding to be barred by res judicata in a subsequent federal section 1983 suit). California claim preclusion analysis focuses on three questions: "(1) was the previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve the same 'claim' or 'cause of action'?" Kay v. City of Rancho Palos Verdes, 504 F.3d 803, 808 (9th Cir. 2007), citing Robi v. Five Platters, Inc., 838 F.2d 318, 324 (9th

4

Cir.1988).[2]  "Res judicata [claim preclusion] prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Kay, 504 F.3d at 809, quoting Robi, 838 F.2d at 324.

Plaintiff does not deny that the state appellate court's decision is a final adjudication on the merits. Rather, plaintiff alleges that *Brentwood II* advances distinct claims that differ from those adjudicated in *Brentwood I*. Plaintiff argues that *Brentwood I* concerned the denial of the Club's permit application, whereas the instant case concerns injuries to the Club other than merely having its permit application denied, such injuries resulting from the fact that the County "put the Club through six years of inexcusable delays." Opp. at 5. California law defines a cause of action in accordance with the primary rights theory, under which "the violation of one primary right gives rise to a single cause of action." Takahashi, 783 F.2d at 851, quoting Slater v. Blackwood, 15 Cal.3d 791, 795 (1976). The Club asserts that the primary right it sought to vindicate in *Brentwood I* was different from the primary right it seeks to vindicate in this action.

Plaintiff relies upon the circumstance that it can describe two separate sets of injuries: (1) the denial of the permit, and (2) the costs associated with a six year delay, completion of various studies, and other efforts plaintiff was required to make to become eligible for a permit. This argument misapprehends the nature of primary rights analysis. Plaintiff could undoubtedly characterize itself as having suffered three or four or a dozen separate injuries for the various costs incurred in the permitting process. This does not mean that three, four, or a dozen primary rights would be at issue. In this case, plaintiff never had a *right to a land use permit*. Rather, plaintiff had the right to *fair proceedings in accordance with law* in the determination of its permit application.

Since the Club had no right to the permit itself, it was of necessity the violation of the right to a fair and lawful process that was at issue in the state court proceedings. Indeed, the arguments asserted by the Club bear this out. See, e.g., Def.'s RJN, Exh. A (plaintiff's appellate brief) at 27 ("The trial court's failure to address the Club's actual and legitimate complaints about the lack of fairness in the prolonged permitting process and administrative proceedings is manifest in that court's treatment of the Club's case."). The Club seeks to vindicate the same primary right in this

5

1  case. Each of the Club's three claims for relief (styled as equal protection, procedural due process,
2  and substantive due process claims) alleges that the permitting process was in some way unfair. The
3  mere act of describing these claims as violations of federal constitutional rights does not change the
4  primary right at issue. See Scoggin v. Schrunk, 522 F.2d 436 (9th Cir. 1975) (holding a federal civil
5  rights claim barred by the res judicata effect of a prior state action even though the federal claim was
6  not asserted in state court). The current dispute involves the same primary right and, therefore, the
7  same cause of action as *Brentwood I*.

8  Plaintiff's reliance on Gallagher v. Frye, 631 F.2d 127 (9th Cir. 1980), and Agarwal v.
9  Johnson, 25 Cal.3d 932 (1979), is misplaced. In both cases, the court found that the plaintiff had
10 based his federal action on a primary right different from the one alleged in the state court action. In
11 Gallagher, the essential issue in the original state action was the jurisdiction of the Civil Service
12 Board to enforce plaintiff's right to a reinstatement order, while the essential issue in the second
13 action was the merits of the plaintiff's underlying termination. Gallagher at 130. The court found
14 that the two lawsuits were based on two separate primary rights. Id. at 130 n.4. Similarly, the
15 Agarwal plaintiff complained of harm (employment discrimination) that was different from that
16 alleged in the earlier state court judgment (defamation and intentional infliction of emotional
17 distress). Agarwal at 955. In each of these cases, the court emphasized the differing harms suffered
18 in order to determine whether the same primary right was at issue. See id. at 954-955 ("[T]he
19 significant factor is the harm suffered; that the same facts are involved in both suits is not
20 conclusive.").

21 The Club, in its attempt to draw parallels between these cases and its case, conflates harms
22 with remedies. The Gallagher and Agarwal plaintiffs were able to allege that they had suffered
23 distinct harms to distinct rights. The Club has requested a new remedy, damages, in *Brentwood II*,
24 but it has not shown a new harm. The thrust of *Brentwood I* was: the permitting process was unfair
25 and burdensome; therefore, a writ of mandamus should issue. The thrust of *Brentwood II* is: the
26 permitting process was unfair and burdensome; therefore, the County should pay damages. The
27 requested remedy has changed; the harm, and therefore the primary right at issue, has not.
28

6

The result in the instant case is governed not by <u>Gallagher</u> and <u>Agarwal</u>, but by <u>Clark</u>. In that case, the plaintiff college instructor had filed a petition for a writ of mandamus in state court to order the college to remove certain materials from his files and desist from taking certain actions he claimed interfered with his teaching responsibilities. <u>Clark</u>, 785 F. 2d at 784. The Ninth Circuit found that although the state court judge wanted to limit the scope of the mandamus proceeding, the plaintiff continually attempted to litigate other issues and claims. <u>Id.</u> at 785. As in this case, the <u>Clark</u> plaintiff's later section 1983 claims substantially overlapped with the claims made in the mandamus proceeding. <u>Id.</u> at 786. The <u>Clark</u> court found that res judicata barred the action, except with regards to events that had occurred since the date of the state court judgment. <u>Id.</u> at 789.[3]

Whether joinder of any claims was permissive or mandatory in *Brentwood I* is irrelevant, since plaintiff has identified no additional claim, based on a different primary right, which it might have joined in the original action. For this reason, the invocation of the Continuing Education of the Bar's practice guide, *California Administrative Mandamus*, fails to aid plaintiff.[4]

This action is barred by the principles of res judicata.

## II.  Collateral Estoppel (Issue Preclusion)

The court notes that each of the Club's claims is barred by collateral estoppel as well. Collateral estoppel bars issues from being relitigated if three conditions are met: "(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." <u>Kinckerbocker v. City of Stockton</u>, 199 Cal. App. 3d 235, 244 (1988). Again, plaintiff does not contest that the last two prongs of this test are met, but rather challenges the identity of the issues to be litigated.

The Club alleges violations of its Fourteenth Amendment equal protection rights. Specifically, the Club complains of the multiple and duplicative environmental studies it had to endure, while the Board granted a permit to an adjacent property owner two months before denying

7

the Club's permit application. Complaint ¶¶ 99-101. The Club also alleges that other similarly situated permit applicants were granted permits in a matter of months, while the Club's permit process took years. Complaint ¶¶ 102-103. These allegations were at issue in *Brentwood I* and were decided in that case. See *Brentwood I* Opinion at 9 & 12. The Club cannot avoid the collateral estoppel bar by simply recycling the same arguments and wrapping them in the terminology of federal constitutional rights.

The Club's two claims for relief based on due process are equally unavailing. The claims boil down to allegations that the permitting process took too long; that the noise standard and other standards were inappropriately changed; that the Club did not have a fair opportunity to present its case to the Board; that the Board's draft findings included a finding (later revised) that the Club conferred no benefit on the community; and that too many biological studies were required. See Complaint ¶¶ 107-118. The California Court of Appeals ruled on each and every one of these issues. See *Brentwood I* Opinion.

The Club suggests that policy considerations militate against applying issue preclusion, because the record in *Brentwood I* was limited to the administrative record, which the Club suggests, without support, is somehow biased. The administrative record is well over three thousand pages long, not including various drafts of the EIR. See Def.'s RJN, Exh. E. This record is voluminous and includes relevant studies, reports, hearing transcripts, emails, and letters, including numerous letters penned by the Club's legal counsel. See id. The only potential piece of evidence outside the administrative record to which plaintiff has pointed is the purported new evidence that Lorin Kramer of Kramer One had revised his report to make it less favorable to the Club under pressure from an unnamed County official. See McRoberts Dec. (recounting a November 2007 encounter between a Club attorney, Glenn S. McRoberts, and Lorin Kramer). Even if McRoberts's hearsay declaration of Kramer's statements is admissible under the hearsay rules of the Federal Rules of Evidence, an issue upon which the court reserves judgment, the significance of McRoberts's declaration is undermined by its failure to provide foundation for what is claimed. McRoberts alleges only that, at some unspecified time, some unnamed County official threatened Kramer with non-payment if Kramer did

not revise his report to make it less favorable to the Club in some unspecified way, and that Kramer unwillingly obliged in some equally unspecified way (and presumably never reported the extortion to law enforcement). See McRoberts Dec. ¶ 5. This half-hearted attempt to inject a new "fact" into the case does not create an issue of such weight that it would overcome the normal rules barring relitigation of issues and the policies underlying those rules. See Southern Pac. R. Co. v. U.S., 168 U.S. 1, 49 (1897) ( "This general rule [of issue preclusion] is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination.  Its enforcement is essential to the maintenance of social order. . . ."). Considerations of both law and policy support the conclusion that the doctrine of collateral estoppel precludes this court from disturbing the state court's determination of the issues raised by the complaint.

CONCLUSION

    For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

    IT IS SO ORDERED.

Dated: October 6, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Although the Court of Appeal's decision is unpublished, it may be cited and relied upon for claim preclusion purposes. Cal. R. Ct. 8.1115(b)(1); <u>Kay v. City of Rancho Palos Verdes</u>, 504 F.3d 803, 809 n.5 (2007).

2. It is worth noting that the Ninth Circuit's interpretation of California res judicata law differs slightly from the standard applied by the California courts. The California test for res judicata includes a specific prong requiring that "the party against whom the bar is asserted must have been a party, or in 'privity' with a party, to the first proceeding." <u>Ferraro v. Camarlinghi</u>, 161 Cal. App. 4th 509, 531 (2008), <u>citing</u> <u>People v. Barragan</u>, 32 Cal.4th 236, 253 (2004). In this case, the party against whom the bar is asserted is the Club, who was the plaintiff in *Brentwood I*.

3. Plaintiff's counsel cited two "new" cases in oral argument. These cases are not only untimely offered but are inapposite. Dicta in <u>Mata v. City of Los Angeles</u>, 20 Cal. App. 4th 141 (1993), does support the proposition that a mandamus action does not provide a basis for res judicata. However, if one were to key cite this case, one would discover that this court has already rejected <u>Mata</u>'s holding as inconsistent with the Ninth Circuit's controlling <u>Clark</u> opinion. <u>Broden v. Marin Humane Society</u>, 1997 WL 818587 (N.D. Cal. 1997), at *4-*5. The other "new" case cited by plaintiff's counsel, <u>Carpinteria Valley Farms, Ltd. v. County of Santa Barbara</u>, 344 F.3d 822 (9th Cir. 2003), was about ripeness, not res judicata.

4. Moreover, plaintiff omits an important word in its citation to the practice guide's advice: "concurrently." *See California Administrative Mandamus* § 10.62 ("Both problems can be avoided by filing a petition for writ of mandamus under CCP § 1094.5 and *concurrently* filing a complaint for money damages or declaratory relief as a separate case.") (emphasis added). The Club filed its petition for writ of mandate on October 11, 2005. This action for damages was filed on July 10, 2006. Plaintiff failed to follow the practice guide it cites.